Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolinas Workers Compensation Act.
2. Liberty Mutual Insurance Company was the carrier on risk.
 *********** ORDER
The copies of checks offered by defendants to document the income of plaintiff while employed by James R. Sauls, and the medical report of Dr. Mark E. Brenner regarding the 8 November 2000 examination of plaintiff and the resulting permanent partial disability rating which were submitted by Order of the Full Commission, are hereby allowed into evidence as part of the record in this case.
 ***********
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 13 February 1995, plaintiff was a 31 year old male employed by James R. Sauls to haul logs. The plaintiff was Sauls only employee.
2. James R. Sauls did not have three or more employees and was not subject to or bound by the North Carolina Workers Compensation Act.
3. Prior to and on 13 February 1995, defendant Timber Harvester acted as a general contractor and had hired James R. Sauls as a subcontractor without first obtaining a certificate of workers compensation insurance or a waiver.
4. On 13 February 1995, plaintiff was involved in a motor vehicle accident while driving a log truck in the course and scope of his employment with James R. Sauls.
5. As a result of this vehicular accident, plaintiff sustained a cut and injuries to his head and neck.
6. Plaintiff sought treatment from New Hanover Regional Medical Center on 13 February 1995. Plaintiff was diagnosed with a neck strain, scalp abrasion, right shoulder contusion, left trapezius contusion and left anterior ankle contusion. X-rays of the cervical spine were negative. The hospital did not give plaintiff a work excuse.
7. Plaintiff was unable to attempt to return to work for Mr. Sauls since the only extra truck available for plaintiffs use was totaled in the 13 February 1995 accident. Plaintiff attempted a trial return to work driving a truck at another company for approximately two weeks in May 1995, but the shaking and bumping involved in going in and out of the woods increased plaintiffs pain to the extent that he was unable to continue performing that job. There is insufficient evidence of record to determine the exact dates in May plaintiff worked for the other company, or the exact amount he earned during that time period.
8. Plaintiff sought treatment from Dr. Abraham Oudeh on 23 June 1995. Dr. Oudeh is a general practitioner in Dunn, and is not certified in any medical field, but he is board eligible in nephrology. Dr. Oudeh treated plaintiff for a sprained back and ordered an MRI. This MRI report was never submitted into evidence because Dr. Oudeh could not find it at the time of his deposition.
9. Dr. Oudeh treated plaintiff six times between 23 June 1995 and 19 July 1995. Plaintiff complained of pain in his neck, lower back and numbness in his legs. Plaintiff failed to follow up with an orthopedist as recommended by Dr. Oudeh.
10. Dr. Oudeh wrote an undated letter to "whom it may concern that plaintiff had a herniated disc, needed back surgery, and had a thirty percent (30%) partial impairment rating to his back. However, this rating was not based on the North Carolina Industrial Commission guidelines, nor even on the American Medical Association guidelines, but was an "arbitrary assessment of Dr. Oudehs.
11. Pursuant to the reopening of the record for additional medical evidence by the Full Commission, plaintiff was examined by Dr. Mark E. Brenner on 8 November 2000. Dr. Brenner found that plaintiffs continuing lower back pain was primarily myofascial in origin and there was no evidence to suggest discogenic neurocompressive disease. Dr. Brenner directly related plaintiffs current condition to his auto accident of 13 February 1995, found that plaintiff has reached maximum medical improvement regarding his back and gave plaintiff a 5% permanent partial disability rating of his lower back.
12. The undersigned give little weight to the testimony of Dr. Oudeh, and no weight to the "arbitrary 30% rating he assigned to plaintiffs back. Dr. Oudeh did not have his complete record or the MRI report at the time of his deposition. The undersigned give greater weight to the results of the examination of Dr. Brenner and the corresponding rating he has provided to the Commission.
13. Although the emergency room on 13 February 1995 did not provide plaintiff with a work excuse other than a 24-hour rest due to the cut on plaintiffs head, plaintiff was unable to return to truck driving for Mr. Sauls because Mr. Sauls only extra truck was totaled in the wreck.
14. On 9 October 1998, approximately two weeks following the hearing before the Deputy Commissioner, defendants offered into evidence copies of checks indicating payments by James Sauls to plaintiff for 29 and 2/7 weeks prior to his automobile accident. While there is no request for these records in the transcript of the hearing before the Deputy Commissioner, an order closing the evidence issued by the Deputy Commission on 19 October 1998 indicates that she had made such a request and was waiting for the information before closing the evidence. Accordingly, the copies of the checks are accepted into evidence and are a part of the record before the Full Commission.
15. Plaintiff was employed by Mr. Sauls July, 1994 through the date of the accident, 13 February 1995. During this time period the plaintiff received the following wages:
 29 July 1994 $50.00 5 August 1994 174.00 12 August 1994 275.85 19 August 1994 320.00 26 August 1994 310.00 2 September 1994 175.00 9 September 1994 160.00 16 September 1994 250.00 23 September 1994 300.00 30 September 1994 375.00 8 October 1994 250.00 14 October 1994 250.00 21 October 1994 372.45 28 October 1994 139.40 4 November 1994 237.50 11 November 1994 330.50 18 November 1994 210.00 26 November 1994 150.00 27 November 1994 50.00 2 December 1994 289.00 8 December 1994 275.00 16 December 1994 300.00 27 December 1994 178.55 30 December 1994 341.25 6 January 1995 175.00 13 January 1995 250.00 19 January 1995 150.00 21 January 1995 50.00 26 January 1995 221.00 3 February 1995 257.80 10 February 1995 283.85 18 February 1995 75.00
Plaintiff's wages varied since he received a percentage of the amount of logs hauled. The weather also factored in as well. Plaintiff worked 29 and 2/7 weeks for Mr. Sauls and earned a total of $7,226.15 during that time period.
16. It is more fair and just to both parties to calculate the plaintiff's average weekly wage on the actual wages he received for the number of weeks he worked. Using this calculation, plaintiff earned an average weekly wage of $246.75, yielding a compensation rate of $164.51 per week.
17. Plaintiff returned to work full-time for another company on 16 January 1995 earning greater wages than he had earned hauling logs for Mr. Sauls. Plaintiff was still employed with this company as a warehouse manager at the time of hearing.
18.As a result of the 13 February 1995 accident, plaintiff was unable to work or earn wages from that date through 16 January 1996, except for two weeks in May 1995.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 13 February 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment. N.C. Gen Stat.97-2(6).
2. Plaintiff was employed less than one year prior to 13 February 1995. The most fair and just computation for plaintiff's average weekly wage is to divide the total amount of wages plaintiff received ($7,226.15) by the number of weeks (29 2/7) plaintiff worked. This calculation yields an average weekly wage of $246.75 and a compensation rate of $164.51 per week. N.C. Gen. Stat. 97-2(5).
3. As a result of plaintiff's compensable accident on 13 February 1995, plaintiff is entitled to temporary total disability at his compensation rate of $164.51 per week for the period 14 February 1995 through 16 January 1996 when he returned to work at greater wages, except for a period of two weeks in May, 1995. N.C. Gen. Stat. 97-29.
4. The 30% permanent partial impairment rating arbitrarily assigned by Dr. Oudeh is unsupported by the evidence of record and so is given no weight by the undersigned. The 5% rating provided by Dr. Brenner is given great weight by the undersigned, and would provide plaintiff with 15 weeks of compensation at the weekly rate of $164.51 under N.C. Gen. Stat.97-31(23).
5. Plaintiff is entitled to have defendants provide all medical treatment arising from his 13 February 1995 injury to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney fee approved below, defendants shall pay to plaintiff temporary total disability benefits from 14 February 1995 through 16 January 1996, at his compensation rate of $164.51 per week, except for a two week period in May, 1995. These amounts have accrued and shall be payable in a lump sum.
2. Defendants shall pay to plaintiff a lump sum of $2,467.65, representing a 5% permanent partial disability to plaintiff's back, subject to attorney's fees approved below.
3. A reasonable attorney fee in the amount of 25% of the compensation due plaintiff under Paragraphs 1 and 2 of this award is approved for plaintiff's counsel and shall be deducted from the amounts due plaintiff and forwarded directly to plaintiff's counsel.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on 13 February 1995 when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
5. Defendants shall pay the costs of this action.
This the ___ day of January, 2001.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
S/_______________ RENEE C. RIGGSBEE COMMISSIONER